UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA PUNZIO, | ) |
| Plaintiff, | ) Case No. 08 CV 3179 |
| v. | ) Judge John W. Darrah |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the motion of Plaintiff, Patricia Punzio, to reverse the final decision of the Commissioner of Social Security, denying her application for Disability Insurance Benefits (Doc. No. 25). For the reasons stated below, Plaintiff's motion is denied.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits on May 2, 2005. The Social Security Administration initially denied her application on August 29, 2005, and again upon reconsideration on March 20, 2006. Plaintiff filed a request for a hearing, which was granted. The hearing was held before Administrative Law Judge Robert Senander ("ALJ") on May 24, 2007, in Oakbrook, Illinois. Plaintiff and a vocational expert testified at the hearing. In a decision dated November 30, 2007, the ALJ determined that Plaintiff was not under a disability within the meaning of the Social Security Act.

The Appeals Council declined to accept jurisdiction of Plaintiff's appeal, making the ALJ's decision the final decision of the Commissioner of Social Security.

1

## LEGAL STANDARD

Under the Social Security Act, the Commissioner's findings are conclusive if they are supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citation omitted). The reviewing court "may not decide the facts, reweigh the evidence, or substitute its judgment for that of the ALJ." *Flores v. Massanari*, 181 F.Supp.2d 928, 937 (N.D. Ill. 2002) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). While the ALJ is not required to address every piece of evidence, the ALJ must articulate some legitimate reason for his decision. "Most importantly, he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Under the Social Security Act, individuals are disabled if they cannot engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I). The ALJ uses the following five-part inquiry to determine whether a claimant has established disability: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in Appendix 1, Subpart 4 of the regulations ("Listing" or "listed impairments"); (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is capable of

2

performing work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001) (*Zurawski*). The ALJ considers the five steps sequentially, *i.e.*, "[a]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . A negative at any point, other than Step 3, ends the inquiry and leads to [a] determination that a claimant is not disabled." *Zurawski*, 245 F.3d at 886.

## ANALYSIS

Plaintiff is a female individual who alleges a disabling condition as of June 20, 1997, at which time she was thirty nine years old, a younger individual. Plaintiff performed past relevant work as a school custodian. Her duties included cleaning and some lifting.

Plaintiff testified that she has had a learning disability, depression and anxiety, starting as early as first grade. She has difficulty orienting herself to places and directions. She also loses track of time and cannot remember dates. However, when the ALJ asked Plaintiff the reason she felt she could not work, Plaintiff replied that she had problems with her hands. Plaintiff alleges the problem with her hands started about twenty years prior to her alleged onset date. She had surgery for right carpel tunnel release in 2001 and for left carpal tunnel release in 2002. Plaintiff testified this helped somewhat but that she still has excruciating pain when she uses her hands and wears braces.

Medical evidence submitted to the ALJ showed that Plaintiff also had some mental problems and depression for which she takes medication. Plaintiff was voluntarily admitted to an inpatient psychiatric ward in April 1998 with suicide ideation.

Plaintiff participated in a day-treatment program, and Dr. Gershuny provided prescriptions for Effexor and Depakote. Dr. Gershuny discharged Plaintiff in May 1998 with a good prognosis and no activity restrictions.

Among other medical evidence, there was evidence that Dr. Singh, on behalf of the Illinois Department of Disability Determination Services, found in October 1998 that Plaintiff had only slight or moderate limitations and that Plaintiff was capable of sustaining simple, unskilled jobs.

In addition, in April 1999, Dr, Chaudry evaluated Plaintiff and found that although Plaintiff had major depression and a history of arthritis of the hands, she is "capable of handling her benefits, if assigned."

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since June 20, 1997 (the alleged onset date). Citing medical evidence in the record pertaining to Plaintiff's treatment for her mental condition and carpal tunnel syndrome, the ALJ found that Plaintiff had severe impairments (status post-carpal tunnel releases and an affective mood disorder) that impose significant limitations upon her ability to perform basic work functions. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Social Security regulations. In this regard, the ALJ found:

> The claimant does not have an impairment involving the hands that results in significant and persistent disorganization of motor functioning in two extremities, with sustained disturbance of gross and dexterous movements.
>
> The claimant's affective disorder is not attended by the ancillary findings necessary to meet or equal Listing 12.04.

The severity of the claimant's mental impairment is measured by assessing functional limitations using the four criteria in paragraph B of the listings; activities of daily living; social functioning, concentration, persistence or pace; and episodes of decompensation, each of extended duration (defined as at least two weeks.) In this regard, the undersigned finds that the claimant has mild restriction of activities of daily living attributable to mental impairment; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no decompensatory episodes of extended duration. The evidence does not establish the presence of the "C" criteria for purposes of Listings 12.04. There are no repeated episodes of decompensation, no suggestion that even a minimal increase in mental demands or change would be predicted to cause the claimant to decompensate, or an inability to function outside of a highly supportive living arrangement of one or more years' duration.

The effects of these mental limitations on work-related activities has been incorporated into the residual functioning capacity described below.

The ALJ found Plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567 and 416.967 that would incorporate lifting/carrying of 20 pounds occasionally and 10 pounds frequently; standing/walking a total of about six hours in an eight-hour workday, with normal breaks; sitting a total of about six hours in an eight-hour workday, with normal breaks; no keyboarding; no contact with the general public; and she is limited to one or two step work tasks." Finally, relying on testimony of the vocational expert, the ALJ found Plaintiff was able to perform her past relevant work as a custodian. The ALJ found:

The impartial vocational expert classified the claimant's past work as light in exertional requirements and unskilled.

The claimant's work as a custodian was recently performed and of sufficient duration to be relevant to this decision. The claimant realized substantial remuneration from her work effort.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant

5

is able to perform it as actually and generally performed. In response to a hypothetical question assuming an individual of the claimant's age, education, and past work experience, with functional limitations such as heretofore described, the vocational expert testified that such an individual would be capable of performing the past work as a custodian, both as actually performed and as usually performed in the regional economy.

The testimony of the vocational expert is accepted as valid and in accordance with SSR 00-4p.

Plaintiff seeks reversal of the Commissioner's final decision in her case and an order that the Commissioner pay her disability insurance benefits or, in the alternative, remand the case to the Commissioner for a new hearing before a different ALJ.

First, Plaintiff contends the ALJ's "step two" determination (that Plaintiff's status post-carpal tunnel releases and affective mood disorder constituted "severe impairments" under the Social Security Act) was erroneous because the ALJ failed at this step also "to make a functional assessment and include in that determination all of [Plaintiff's] documented impairments." Specifically, Plaintiff contends she also has ADD, dyslexia, and a learning disability. Plaintiff contends that the ALJ's failure to make a "functional assessment" of these problems at the step-two level "distorts the subsequent sequential evaluation process" and fails to apprise the Court of the reasoning underlying the ALJ's conclusions.

Plaintiff's argument is not a basis to overturn the determination of the ALJ. As the Seventh Circuit has stated, the determination of "severity [of impairment] is merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). A minimum level of articulation is required. *Unger v. Barnhart*, 507 F. Supp.2d 929, 938 (N.D. Ill. 2007). The ALJ is not required to address every piece of testimony or

6

evidence. Rather, the ALJ cannot simply ignore all evidence favorable to the claimant and must articulate his analysis "at some minimum level." *Id.* The findings of the ALJ are sufficient in this regard. The ALJ considered evidence favorable to Plaintiff's position that she suffered from severe impairments and found that Plaintiff had severe impairments (status post-carpal tunnel releases and an affective mood disorder).

Second, Plaintiff argues the ALJ erred in determining that Plaintiff's impairments did not meet or equal a listed impairment. Plaintiff argues the ALJ erred in failing to refer to the record or to the Listings to "corroborate" his finding that Plaintiff's impairments involving her hands "do not result in significant and persistent disorganization of motor functioning in two extremities"; Plaintiff further argues the ALJ erred in finding that Plaintiff's mental impairment did not meet or equal Listing 12.04.

As to Plaintiff's argument with respect to her carpal tunnel syndrome, a claimant has the burden of showing that an impairment meets a listing and must show that his impairments satisfy all of the various criteria specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999)). As the Commissioner points out, Plaintiff here has not identified any specific listing, or criteria related thereto, that encompasses her physical condition, carpal tunnel syndrome. It is not the burden of the ALJ to identify a listing.

Further, the ALJ's determination that Plaintiff's mental condition did not meet Listing 12.04 is supported by substantial evidence. Listing 12.04 provides that the required level of severity for an affective disorder exists when the requirements in both A and B of the listing are met, or when the requirements in C are satisfied. The B criteria

include at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The C criteria require a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation on the ability to do basic work functions. As set out above, the ALJ found that Listing 12.04 was not met because he found Plaintiff has mild restriction of activities of daily living attributable to mental impairment; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no decompensatory episodes of extended duration. In addition, the ALJ found the C criteria were not established.

Substantial evidence in the record supports the ALJ's determination. The psychiatric review technique form of record, filled out by Dr. Singh in October 1998, indicated that Plaintiff had only slight restrictions in her activities of daily living. Plaintiff has not identified evidence contradicting this or indicating that she has "marked" restrictions in her activities of daily living. In addition, the evidence showed that Plaintiff had only one hospitalization for her mental problems in 1998; she was released from that treatment with a good prognosis. Plaintiff has not identified evidence contradicting the ALJ's determination that she did not have any decompensatory episodes of extended duration.

Plaintiff next argues the ALJ did not properly evaluate her residual functional capacity ("RFC") under the "special technique" applicable to determining the functioning of claimants who present with mental impairments.[1] Plaintiff's argument is that the ALJ failed to document his findings as to her RFC with reference to the medical records.

However, the ALJ's analysis complies with *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008). The ALJ explained his reasoning and cited evidence as to Plaintiff's medical and psychiatric treatments and her own testimony about her problems and found that the

---

[1]The "special technique" applicable to determining the functioning of claimants who present with mental impairments was summarized as follows by the Seventh Circuit:

> The special technique requires that the ALJ evaluate the claimant's 'pertinent symptoms, signs, and laboratory findings' to determine whether the claimant has a medically determinable mental impairment. If the claimant has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. These functional areas are known as the 'B criteria.'
>
> The first three functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. The final functional area is rated on a four-point scale of none, one or two, three, and four or more. The ratings in the functional areas correspond to a determination of severity or mental impairment. If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe. Otherwise, the impairment is considered severe, and the ALJ must determine whether it meets or is equivalent in severity to a listed mental disorder. If the mental impairment does not meet or is not equivalent to any listing, the ALJ will assess the claimant's RFC. The ALJ must document use of the special technique by incorporating the pertinent findings and conclusions into the written decision. The decision must elaborate on significant medical history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the mental impairment's severity.

*Craft v. Astrue*, 539 F.3d 668, 674-75 (7th Cir. 2008) (internal citations omitted).

evidence on the whole did "not delineate an individual who is totally incapable of working." In reaching this finding, the ALJ found Plaintiff's own testimony about the severe and debilitating nature of her "subjective complaints . . . not fully credible." The ALJ found the evidence of record taken as a whole "not supportive of claimant's alleged need to lie down an inordinate amount of time during the day, her inability to stay on task for 25 percent to 33 percent of any given workday, and the need for frequent absenteeism." In addition, the ALJ noted that he had considered the opinions of Dr. Mahmoud and Jodi Shakin, a YMCA counselor, provided by Plaintiff and found that their opinions served to establish a severe impairment but were inconsistent with the ALJ's determinations of Plaintiff's restrictions. The ALJ's analysis is sufficient and supported by substantial evidence.

Plaintiff next argues that the ALJ erred in his credibility determination of Plaintiff. An ALJ's credibility determination will be reversed only if it is patently wrong. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Plaintiff argues that the ALJ did not sufficiently explain the evidence underlying his credibility determination. But Plaintiff does not demonstrate that the ALJ's credibility determination is patently wrong. In fact, substantial evidence supports the ALJ's credibility determination. As noted above, reports of several doctors indicate that despite Plaintiff's subjective complaints, she is able to sustain simple unskilled jobs and handle her own benefits. This is consistent with the ALJ's credibility determination that "[t]he evidence of the record taken as a whole is not supportive of claimant's alleged need to lie down an inordinate amount of time during the day, her inability to stay on task for 25 percent to 33 percent of

any given workday, and the need for frequent absenteeism." The ALJ's credibility determination will not be overturned.

Finally, Plaintiff argues the ALJ's determination that Plaintiff was capable of performing her past work as a custodian was without substantial evidence because the ALJ did not include "elements of plaintiff's mental impairments in the hypothetical questions propounded to the [vocational expert]."

The ALJ asked the vocational expert the hypothetical question whether a person with Plaintiff's vocational characteristics, who was limited to one-or two step-jobs, no contact with the general public, had the ability to lift ten pounds frequently and twenty pounds occasionally, could sit six hours and stand for six hours but could not use a keyboard could perform Plaintiff's past relevant jobs; and the vocational expert answered yes. The ALJ later added the limitation of an inability to read effectively, and the vocational expert responded that this limitation would not change her answer. The vocational expert also identified other jobs (factory jobs, assembly jobs and packing jobs) as jobs that did not require reading skills.

Plaintiff argues that the ALJ's hypothetical questions to the vocational expert were flawed because the ALJ should have included in his hypothetical "elements of plaintiff's mental impairments." She points out that, upon her counsel's cross-examination at the hearing, the vocational expert testified that a person who had the following additional restrictions could not maintain employment: a person who had moderate (defined as a quarter to one-third of the time) restriction to stay on task, a person who could not comprehend or understand instructions 20 percent 30 percent of the

time, and a person who would be absent from work as frequently as three times each month.

However, the ALJ's hypothetical questions are not in error. An ALJ is required to include in hypothetical questions only those impairments that are documented and supported in the medical record. *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) ("the ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence.") Plaintiff does not cite to medical evidence in the record that she cannot stay on task and would frequently be absent from work. Accordingly, it was not error for the ALJ to fail to incorporate those restrictions in his hypothetical question. In addition, as noted above, the ALJ did incorporate into his questions of the vocational expert a limitation of an inability to read effectively (due to Plaintiff's dyslexia); and the vocational expert testified that this restriction would not affect a person's ability to work.

The ALJ's hypothetical questions are supported by substantial evidence, and the ALJ's hypothetical questions to the vocational expert were not flawed in this regard.

## CONCLUSION

For all of the reasons stated above, the Commissioner's findings are supported by substantial evidence and no error of law occurred; therefore, the Commissioner's findings are conclusive. Plaintiff's motion to reverse the final decision of the Commissioner is denied.

Date: June 24, 2009

JOHN W. DARRAH
United States District Judge

12